Marshak v Marshak (2025 NY Slip Op 04281)

Marshak v Marshak

2025 NY Slip Op 04281

Decided on July 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 24, 2025

CV-24-0212
[*1]Wendy Marshak, Respondent,
v
Harvey Marshak, Appellant.

Calendar Date:June 4, 2025

Before:Egan Jr., J.P., Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for appellant.
Abbott Law, PLLC, New York City (Barry Abbott of counsel) and Schwartz Sladkus Reich Greenberg Atlas LLP, New York City (S. Yan Sin of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (James Gilpatric, J.), entered December 29, 2023 in Ulster County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) had a longstanding romantic and business relationship that began in the early 2000s, but did not marry until June 2018. The parties acquired significant assets prior to their marriage, including their residence in the Town of Rochester, Ulster County, a property that was initially purchased by the wife in 2007 but that became jointly titled in 2015. The parties were also shareholders in International Pathways, Inc. (hereinafter IPI), a business they founded in 2005 to connect would-be physicians with a medical school in Australia. The pair amassed monies from their work for, and shareholder distributions from, IPI and related entities, and had interests in real property adjacent to the marital residence through their retirement accounts from IPI.
The wife moved out of the marital residence in October 2020 and commenced this divorce action in December 2020, alleging that there had been an irretrievable breakdown in the marriage for at least six months (see Domestic Relations Law § 170 [7]). After extensive discovery and motion practice, the matter proceeded to a nonjury trial that took place over the course of eight days in 2023. The trial primarily focused upon issues of equitable distribution, including whether the husband had improperly handled the assets of IPI during the parties' marriage and what to do with the marital residence and the property adjacent to it. Supreme Court subsequently issued a decision in which it found that the wife was entitled to a divorce and made a distributive award in which it directed that each party keep the various financial accounts in his or her name and retain the vehicle in his or her possession. The remaining marital assets were largely sold or distributed so that their value would be equally divided between the parties, although departures from that general approach included an adjustment to the sale proceeds of the marital residence to reflect the separate assets the wife used to purchase it and a directive that the husband pay the wife $223,807 to cover her income tax liabilities for the 2020 tax year. Supreme Court further declined to award either party maintenance, but did direct that the husband pay the wife $549,962.37 in counsel fees and $122,951 in expert fees.[FN1] The husband appeals.
The husband challenges "several aspects of Supreme Court's equitable distribution award, which will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (Robinson v Robinson, 133 AD3d 1185, 1187 [3d Dept 2015] [internal quotation marks and citations omitted]; see Domestic Relations Law § 236 [B] [5]; DeSouza v DeSouza, 163 AD3d 1185, 1190 [3d Dept 2018]). Supreme Court considered [*2]the statutory factors it deemed relevant and, in assessing whether it abused its discretion in making the award, we accord great weight and deference to its assessment that the testimony and supporting evidence presented by the wife regarding the parties' finances was credible and that the testimony of the husband, which it described as being largely uncorroborated and riddled with "numerous misrepresentations and self-serving statements," was not (see DeSouza v DeSouza, 163 AD3d at 1190). Notwithstanding the husband's efforts to argue otherwise, we perceive nothing in the record that would give us good reason to question that assessment of credibility.
The husband first argues that Supreme Court should not have directed him to pay the wife $223,807 to cover her 2020 income tax liability. In that regard, Supreme Court credited the wife's testimony that the husband had been responsible for their tax decisions and generally filed a joint tax return, but that he elected to file his 2020 taxes separately and did not notify her of that decision until just before the filing deadline in the spring of 2021. The testimony of the wife and her financial expert further reflected that the husband controlled the finances of IPI and that he failed to pay her all of the corporate shareholder distribution to which she was entitled prior to the filing deadline, leaving her without the income she owed taxes on even if she could have prepared a timely return.[FN2] The end result was that, due to the husband's actions, the wife missed the tax deadline and ended up owing approximately $250,000 in federal and state taxes that she was still paying down by the time of trial. Indeed, although the husband's financial expert noted that the wife could have requested an extension to file her return, even he acknowledged that she did not receive sufficient funds to cover the tax bill until September 2021 and incurred penalties as a result. Under these circumstances, Supreme Court properly directed that the husband pay the wife to cover her 2020 tax liability (compare Cusumano v Cusumano, 96 AD3d 988, 989 [2d Dept 2012], and Cooper v Cooper, 84 AD3d 854, 857 [2d Dept 2011], with Greenberg v Greenberg, 162 AD3d 870, 873-874 [2d Dept 2018]).
The husband's remaining challenges to the distributive award do not demand extended discussion. Supreme Court credited the wife's testimony that she used $50,000 of her separate assets — namely, money she inherited from her father in 2006 — to purchase the marital residence in 2007. This expenditure of separate funds was properly taken into account by Supreme Court "when exercising its discretion in arriving at an equitable distribution of" the marital residence and directing that the wife be credited for her payment out of the proceeds from its sale (Beardslee v Beardslee, 124 AD3d 969, 969 [3d Dept 2015]; see Hughes v Hughes, 200 AD3d 1404, 1410 [3d Dept 2021]). Supreme Court determined, in contrast, that the husband had not demonstrated that [*3]he used separate funds when he unilaterally decided to spend $400,000 to improve the property adjacent to the marital residence during the pendency of this action. As a result, Supreme Court properly declined to credit the husband for those expenditures when it directed that such property be sold (see DeSouza v DeSouza, 163 AD3d at 1191-1192; Cassara v Cassara, 1 AD3d 817, 819-820 [3d Dept 2003]). There is also "no requirement that the distribution of each item of marital property be on an equal or 50-50 basis," and Supreme Court did not abuse its discretion in declining to credit the husband for what he claimed were differences in the value of the parties' vehicles or the amount of gifts made by each of the parties to their respective children (Arvantides v Arvantides, 64 NY2d 1033, 1034 [1985]; see Vantine v Vantine, 125 AD3d 1259, 1261 [3d Dept 2015]). We are, in short, satisfied that the distributive award made by Supreme Court was proper in every respect.
The husband further argues that Supreme Court abused its discretion in directing him to pay his pro rata share of the wife's counsel fees, amounting to $549,962.37, and expert fees in the amount of $122,951. Although the husband correctly points out that the distributive award received by the wife was a relevant factor in assessing "[t]he relative financial positions of the parties," Supreme Court determined, and we agree, that the husband was still in better financial straits than the wife given his control over IPI and use of its corporate assets (Redgrave v Redgrave, 22 AD3d 913, 914 [3d Dept 2005]; see Ferraro v Ferraro, 257 AD2d 596, 597 [2d Dept 1999], lv denied 93 NY2d 803 [1999]). This raised a "rebuttable presumption that counsel fees shall be awarded to" the wife, which the husband failed to rebut (Domestic Relations Law § 237 [a]; see Angello v Angello, 237 AD3d 1318, 1323 [3d Dept 2025]). Supreme Court further credited the proof that the husband unnecessarily complicated this case by, among other things, refusing the wife's offer to engage in mediation to resolve their financial disputes because he wanted to avoid disclosing information about the finances of IPI. By doing so, the husband forced the wife to engage in prolonged discovery to obtain information about IPI and prepare to litigate the disposition of other assets, retain an expert to analyze the corporate ledgers to determine how corporate monies had been used by the husband and how much of that money should have been paid to the wife, and then go through an extended trial. Suffice it to say, in view of "the financial circumstances of the parties, the relative merits of their positions, and the tactics of the husband in unnecessarily prolonging and complicating this litigation," Supreme Court properly exercised its discretion in directing the husband to pay counsel and expert fees to the wife (Kaprov v Stalinsky, 145 AD3d 869, 874 [2d Dept 2016], lv denied 29 NY3d 913 [2017]; see DeCabrera v Cabrera-Rosete, 70 NY2d 879, [*4]881 [1987]; Culen v Culen, 157 AD3d 930, 933 [2d Dept 2018]; Conway v Conway, 29 AD3d 725, 726 [2d Dept 2006]).
To the extent that they are not addressed above, the husband's arguments have bene considered and are devoid of merit.
Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the facts, without costs, by reducing the counsel fee awarded to plaintiff to $549,962.37 and increasing the expert fee awarded to plaintiff to $122,951, and, as so modified, affirmed.

Footnotes

Footnote 1: The decision of Supreme Court states that the counsel fee award is $549,962.37 and that the expert fee award is $122,951, while the judgment states that the counsel fee award is $566,670.31 and that the expert fee award is $120,989. "Where there is an inconsistency between a judgment and the decision upon which it is based, the decision controls" (Verdrager v Verdrager, 230 AD2d 786, 787-788 [2d Dept 1996] [citations omitted]; see Matwijczuk v Matwijczuk, 290 AD2d 854, 855 [3d Dept 2002]). As such, we rely upon the figures in the decision and modify the judgment "to properly reflect the decision" (Verdrager v Verdrager, 230 AD2d at 788; see CPLR 5019 [a]; Lake George Park Commn. v Salvador, 72 AD3d 1219, 1221 n 2 [3d Dept 2010]).

Footnote 2: Notably, it appears that the wife did not have distributions from prior years either, as Supreme Court credited her testimony that she did not know the extent to which she was owed these distributions and learned after the fact that "95 percent" of them had been deposited in the husband's accounts.